IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| NOBLEWOOD IP LLC, | |
| *Plaintiff*, | Case No. _____ |
| v. | DEMAND FOR JURY TRIAL |
| PURE BARRE, LLC, | |
| *Defendant*. | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

1.      Noblewood IP LLC ("Noblewood" or "Plaintiff"), by and through its counsel, hereby brings this action for patent infringement against Pure Barre, LLC ("Pure Barre" or "Defendant"), alleging infringement of the following validly issued patent (the "Patent-in-Suit"): U.S. Patent No. 7,941,553 titled "Method and device for streaming a media file over a distributed information system" (the '553 Patent) attached hereto as Exhibit A.

## NATURE OF THE ACTION

2.      This is an action for patent infringement arising under the United States Patent Act 35 U.S.C. §§ 1 et seq., including 35 U.S.C. § 271.

## PARTIES

3.      Plaintiff Noblewood IP LLC is a Texas company and has a principal place of business at 3333 Preston Road Ste 300 #1067, Frisco, TX 75034. Noblewood may be served with process through its registered agent InCorp Services, Inc., 815 Brazos St., Ste 500, Austin, TX 78701.

4.      On information and belief, Defendant Pure Barre, LLC is a corporation organized

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

under the laws of Delaware and having a principal place of business at 17877 Von Karman Ave Suite 100, Irvine, CA 92614. Pure Barre may be served via its registered agent  Paracorp Incorporated, 2140 S Dupont Hwy, Camden, DE 19934.

JURISDICTION AND VENUE

5.      This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 et seq. The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367.

6.      The Court has personal jurisdiction over Defendant for the following reasons: (1) Defendant is present within or has minimum contacts within the State of Texas and the Eastern District of Texas; (2) Defendant has purposefully availed itself of the privileges of conducting business in the State of Texas and in this district; (3) Defendant has sought protection and benefit from the laws of the State of Texas; (4) Defendant regularly conducts business within the State of Texas and within this district, and Plaintiff's cause of action arises directly from Defendant's business contacts and other activities in the State of Texas and in this district; and (5) Defendant has purposely availed itself of the privileges and benefits of the laws of the State of Texas.

7.      Defendant, directly and/or through intermediaries, ships, distributes, uses, offers for sale, sells, and/or advertises products and services in the United States, the State of Texas, and the Eastern District of Texas including but not limited to the products which contain the infringing elements as detailed below. Upon information and belief, Defendant has committed patent infringement in the State of Texas and in this district; Defendant solicits and has solicited customers in the State of Texas and in this district; and Defendant has paying customers who are residents of the State of Texas and this district and who each use and have used the Defendant's products and services in the State of Texas and in this district.

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

8.      Venue is proper in the Eastern District of Texas over Pure Barre, LLC pursuant to 28 U.S.C. §§ 1400(b). Defendant has a regular and established place of business in this district, has transacted business in this district, and has directly and/or indirectly committed acts of patent infringement in this district. For example, Pure Barre, LLC has at least a regular and established place of business at 8305 Preston Rd Suite 200, Plano, TX 75024.

<u>PATENT-IN-SUIT</u>

9.      Plaintiff incorporates the above paragraphs herein by reference.

10.     On May 10, 2011, United States Patent No. 7,941,553 titled "Method and device for streaming a media file over a distributed information system" was duly and legally issued by the United States Patent and Trademark Office. The '553 Patent is presumed valid and enforceable.

11.     Plaintiff is the assignee of all right, title and interest in the '553 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '553 Patent.

12.     The '553 Patent generally relates to transfer of digital information. Specifically, the '553 Patent relates to a method, computer program product and a device for streaming a media file over a distributed information system, such as the Internet, to a client computer running a browser application.

13.     The inventions disclosed in the Patent-in-Suit were not well-understood, routine, or conventional. At the time the '553 Patent was filed, there existed various problems in how to distribute rich media across the Internet. *See* Ex. A, '553 Patent, 1:19-20. While rich media data allows for the extension of traditional computer data formats into more natural data formats accommodating audio, images, video and more, such methods generate new obstacles resulting from the massive amount of data that must be transmitted. *See* Ex. A, '553 Patent, 1:16-20.

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

14.     At the time of the invention, standard HTML browsers were the most common way for persons to access information and applications across the Internet. *See* Ex. A, '553 Patent, 1:54-58. These browsers communicate to servers utilizing standard protocols like http (Hypertext Transfer Protocol) and ftp (File Transfer Protocol), whereby a server is a computer that provides some service for other computers connected to it via a network. *See* Ex. A, '553 Patent, 1:58-62. However, those browsers' behavior was ultimately limited by the capabilities of the communication protocols used. Ftp protocol is optimized to tasks related to the more simplified tasks of file upload and download, while http protocol is designed to handle more complex requirements, such as files that can contain references to other files whose selection will elicit additional transfer requests. *See* Ex. A, '553 Patent, 2:1-5.

15.     At the time of the invention, HTTP and RTSP streaming were the two types of streaming protocols that predominated the streaming landscape. However, both had their limitations.  HTTP Streaming allowed for the transport of media data over HTTP and thus was generally an option for standard web browsers; however, this method had severe limitations regarding the ability to forward or rewind a stream. *See* Ex. A, '553 Patent, 2:22-24. Other protocols such as RTSP (Real Time Streaming Protocol) have to fulfill other requirements, which are not available in a default web browser.  *See* Ex. A, '553 Patent, 2:18-22. Moreover, RTSP requires the introduction of so-called streaming metadata in order to enable browsers to start a web application that initiates the streaming. *See* Ex. A, '553 Patent, 2:28-30. In order to enable streaming of rich media files through different streaming servers and therefore to different players, proprietary metadata for each player/server pair needs to be provided. *See* Ex. A, '553 Patent, 2:28-30.  In an environment in which millions of different rich media files are held for streaming, the

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

effort required for maintenance of the metadata files and web pages is enormous, especially if environment changes like the movement and/or replacement of stream server software becomes necessary. *See* Ex. A, '553 Patent, 2:37-46.

16.     The claimed invention addressed the problems detailed *supra* by providing a method and device for streaming a media file over a distributed information system to a client computer running a browser application. *See* Ex. A, '553 Patent, 3:29-32. The idea of the invention is to target standard HTTP requests for rich media files towards a component that is called a "Opaque Streaming Meta Data Server." *See* Ex. A, '553 Patent, 4:9-12. Then, the server provides a metafile; e.g., by dynamically generating the metafile or, alternatively, statically querying the metafile from a respective data storage, whereby said metafile contains information about the identification, location and format of the media file, and returns it back to the client computer. *See* Ex. A, '553 Patent, 4:33-38. Through this process, the invention describes a method which overcomes the playback limitations of HTTP while also avoiding the pitfalls of RTSP, i.e. its unavailability on standard browsers as well as cumbersome storage of metadata for various different players.

17.     The claims of the Patent-in-Suit do not merely recite the performance of a familiar business practice with a requirement to perform it on the Internet. Instead, the claims recite one or more inventive concepts that are rooted in improving the distribution of rich media across the Internet.

18.     Moreover, the claimed inventions taught of the Patent-in-Suit cannot be performed with pen and paper or in the human mind.  Additionally, because the Patent-in-Suit addresses problems rooted in improving the distribution of rich media across the Internet, the

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

solutions it teaches are not merely drawn to longstanding human activities.

## ACCUSED PRODUCTS

19.     Defendant makes, uses, offers for sale, sells in the U.S., and/or imports into the U.S. products, systems, and/or services that infringe the Patent-in-Suit, including, but not limited to the Pure Barre website.

20.     The Pure Barre website includes video(s) which operates by intercepting a download request (e.g., request for playing/downloading a video file) for the actual media file and reinterpreting that download request into a request for receiving a corresponding metafile, wherein that metafile has information about the identification, location, and format.  This allows users to play a specific segment of a given media file.

## COUNT I
### (Infringement of U.S. Patent No. 7,941,553)

21.     Plaintiff incorporates the above paragraphs herein by reference.

22.     The '553 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on May 10, 2011. The '553 Patent is presumed valid and enforceable. *See* 35 U.S.C. § 282.

23.     Plaintiff is the owner by assignment of the '553 Patent and possesses all rights of recovery under the '553 Patent, including the exclusive right enforce the '553 Patent and pursue lawsuits against infringers.

24.     Without a license or permission from Plaintiff, Defendant has infringed and continues to directly and indirectly infringe on one or more claims of the '553 Patent by importing, making, using, offering for sale, or selling products and devices that embody the patented inventions, including, without limitation, one or more of the patented '553 systems and methods,

in violation of 35 U.S.C. § 271.

<u>Direct Infringement – 35 U.S.C. **§ 271(a)**</u>

25.     Plaintiff incorporates the above paragraphs herein by reference, the same as if set forth herein.

26.     Without a license or permission from Plaintiff, Defendant has infringed and continues to directly infringe on one or more claims of the '553 Patent by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the patented '553 systems and methods, in violation of 35 U.S.C. § 271.

27.     Defendant has been and continues to directly infringe by, among other things, practicing all of the steps of the '553 Patent, for example, through internal testing, quality assurance, research and development, and troubleshooting. *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993); *see also* 35 U.S.C. § 271 (2006).

28.     By way of example, Defendant has infringed and continues to infringe at least one or more claims of the '553 Patent, including at least Claim 1. Attached hereto as Exhibit B is an exemplary claim chart detailing representative infringement of Claim 1 of the '553 Patent.

<u>Induced Infringement – 35 U.S.C. **§ 271(b)**</u>

29.     Plaintiff incorporates the above paragraphs herein by reference, the same as if set forth herein.

30.     Defendant had post-suit knowledge when this suit was filed. *See EON Corp. IP Holdings, LLC v. Sensus USA, Inc.*, No. C-12-1011 EMC, 2012 WL 4514138, at *1 (N.D. Cal. 2012) (citing *In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1345 (Fed. Cir. 2012)) (noting that the Federal Circuit has determined that post-filing knowledge is sufficient to

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

meet the knowledge requirement for indirect infringement).

31.     Defendant has been and now is indirectly infringing by way of inducing infringement by others of the '553 Patent in the State of Texas, in this judicial District, and elsewhere in the United States, by, among other things, distributing the Accused Products to its customers as well as promotional materials, thereby inducing end users and others to use its products in a manner that infringes one or more claims of the '553 Patent, which supports a finding of an intention.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932 (2005) ("[I]t may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

32.     For example, Defendant induced users to use the Pure Barre website, actively prompting infringement by advertising for the Pure Barre website and encouraging users to play video(s) that utilizes the infringing technology. *See, e.g.*, Ex. C[1] (advertising Pure Barre and its "total-body barre workout that transforms you physically and mentally")  Ex. D[2] (providing videos which generally promote the Pure Barre brand and website); and Ex. E[3] (providing a video which performs the claimed steps, promoting Pure Barre and encouraging users to "Watch Video"). These resources advertise the Pure Barre brand and induce the user to use video(s) utilizing the infringing technology.

33.     The allegations herein support a finding that Defendant induced infringement of the '553 Patent. *See Power Integrations v. Fairchild Semiconductor*, 843 F.3d 1315, 1335 (Fed. Cir. 2016)

---

[1] Available at https://www.purebarre.com/.
[2] Available at https://www.youtube.com/user/PureBarreCompany.
[3] Available at https://www.purebarre.com/class-formats.

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement [e.g., advertisements, user manuals] directed to a class of direct infringers [e.g., customers, end users] without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

<u>Contributory Infringement – 35 U.S.C. § 271(c)</u>

34.    Plaintiff incorporates the above paragraphs herein by reference, the same as if set forth herein.

35.    Defendant had post-suit knowledge when this suit was filed. *See EON Corp. IP Holdings, LLC v. Sensus USA, Inc.*, No. C-12-1011 EMC, 2012 WL 4514138, at *1 (N.D. Cal. 2012) (citing *In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1345 (Fed. Cir. 2012)) (noting that the Federal Circuit has determined that post-filing knowledge is sufficient to meet the knowledge requirement for indirect infringement).

36.    On information and belief, Defendant contributes to its users' infringement of at least Claim 1 of the '553 Patent by actions of making, using, selling, offering for sale, and/or importing the Accused Products that have no substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1321 (Fed. Cir. 2009) (holding that the "substantial non-infringing use" element of a contributory infringement claim applies to an infringing feature or component, and that an "infringing feature" of a product does not escape liability simply because the product as a whole has other non-infringing uses). The Accused Product does not allow one to disable the infringing technology when used.

<u>Willful Infringement</u>

37.    Plaintiff incorporates the above paragraphs herein by reference, the same as if set forth herein.

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

38.     Defendant had post-suit knowledge when this suit was filed. *See EON Corp. IP Holdings, LLC v. Sensus USA, Inc.,* No. C-12-1011 EMC, 2012 WL 4514138, at *1 (N.D. Cal. 2012) (citing *In re Bill of Lading Transmission and Processing System Patent Litigation,* 681 F.3d 1323, 1345 (Fed. Cir. 2012)) (noting that the Federal Circuit has determined that post-filing knowledge is sufficient to meet the knowledge requirement for indirect infringement).

39.     Despite its knowledge of the '553 Patent, Defendant has sold and continues to sell the Accused Products in egregious disregard of Plaintiff's patent rights. Defendant has acted recklessly and continue to willfully, wantonly, and deliberately engage in acts of infringement of the '553 Patent, justifying an award to Plaintiff of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

**Plaintiff Suffered Damages**

40.     Defendant's acts of infringement of the Patent-in-Suit have caused damage to Plaintiff, and Plaintiff is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. The precise amount of damages will be determined through discovery in this litigation and proven at trial.

**REQUEST FOR RELIEF**

41.     Plaintiff incorporates each of the allegations in the paragraphs above and respectfully asks the Court to:

(a)     enter a declaration that Defendant has directly infringed, contributorily infringed, and/or induced infringement of one or more claims of the '553 Patent;

(b)     enter a judgment awarding Plaintiff all damages adequate to compensate him for Defendant's infringement of, direct or contributory, or inducement to infringe, the

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

(c)     enter a judgment awarding treble damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of the '553 Patent;

(d)     issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Defendant, its directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and its subsidiaries, divisions, successors, and assigns, from further acts of infringement, contributory infringement, or inducement of infringement of the '553 Patent;

(e)     enter a judgment requiring Defendant to pay the costs of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest; and

(f)     award Plaintiff all other relief that the Court may deem just and proper.


Dated: February 25, 2022                      Respectfully submitted,


                                              /s/  Kirk J. Anderson
                                              Kirk. J. Anderson (CA SBN 289043)
                                              kanderson@budolaw.com
                                              BUDO LAW, P.C.
                                              5610 Ward Rd., Suite #300
                                              Arvada, CO 80002
                                              (720) 225-9440 (Phone)
                                              (720) 225-9331 (Fax)

                                              *Attorney(s) for Plaintiff Noblewood IP LLC*

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL